DAVID B. MILLER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Miller v. Commissioner
Docket No. 4643-86.
United States Tax Court
T.C. Memo 1988-15; 1988 Tax Ct. Memo LEXIS 15; 54 T.C.M. (CCH) 1517; T.C.M. (RIA) 88015; January 11, 1988. James E. T. Lange, for the petitioner. Dianne I. Crosby, *16 for the respondent. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge: For the calendar years 1979 through 19982, respondent determined deficiencies in tax and additions to tax against petitioner as follows: ADDITIONS TO TAX [1]
6651(a)(1)
6653(a)(1)
6653(a)(2)
6654
1979
$ 6,219.00
$ 1,554.75
$ 310.95   $ 259.00
1980
1,222.07
305.52
61.10   77.87
1981
2,190.34
547.59
109.52
50 % of interest
167.83
on $ 2,190.34
1982
695.82
173.96
34.79
50% of interest
67.73
on $ 695.82
After concessions by both sides, [2] the issues which we must resolve are: 1. Whether petitioner had $ 3,000 of unreported income from the sale of pottery in 1979. 2. Whether petitioner had allowable travel expenses in 1979 and additional automobile expenses in 1980, both in connection with his activity of personnel recruiting. 3. Whether *17 petitioner is entitled to deductions for any year of expenses allegedly incurred in connection with his activity involving the production of a documentary film on the Viet Nam War. 4. Whether petitioner is entitled to deductions in all years in connection with an alleged home office. 5. Whether petitioner is subject to additions to tax for all years under section 6654. Some of the facts herein were stipulated, and such stipulation of facts, together with accompanying exhibits, is incorporated herein by this reference. FINDINGS OF FACT Petitioner, who is a cash basis, calendar year taxpayer, was a resident of Arlington, Virginia, at the time he filed his petition herein. Petitioner filed no Federal income tax returns for the calendar years 1979, 1980, 1981 or 1982, the years at issue in this case. During all or part of this period, however, petitioner was engaged in various income-producing activities. One of such activities in which petitioner *18 engaged during the year 1979 was the purchase and sale of pottery. Some of the pottery which petitioner purchased was resold at wholesale, and still other items of pottery were sold at retail by petitioner as a street vendor. During the course of examination of his 1979 year, petitioner made certain statements to respondent concerning his income and expenses in the pottery business. From this, respondent determined that petitioner had $ 3,000 of unreported income from pottery sales int he year 1979. Another of the activities in which petitioner engaged during all the years in issue was in doing personnel recruiting work for various companies in the power generation field. He was not an employee of any of the companies for which he did such work, but was paid commissions by such companies for successfully recruiting qualified people to work for them. The parties have stipulated the amounts of income which petitioner earned from this activity, which is not in issue herein. In connection with this work, petitioner incurred certain expenses, which respondent allowed as Schedule C expenses upon audit of petitioner's years here in issue. The parties are in agreement as to the amount *19 of these deductions, with the exception that petitioner claims additional deductible expenses for business travel in 1979, and additional automobile expenses for the year 1980, both in unspecified amounts, which respondent refused to allow for lack of substantiation. Another project in which petitioner engaged during all or part of the years in question was the production of a documentary movie concerning the Viet Nam War. Petitioner was not a Viet Nam veteran, nor had he ever visited Viet Nam, but about 1978 or 1979, he conceived the idea of putting together a documentary film of the Viet Nam conflict, viewed from the standpoint of the men who had engaged in the war. Petitioner's sources for this film were two-fold: (a) Official movie films taken by army personnel and kept in government archives. (b) "Home movies," filmed by U.S. personnel in Viet Nam using their own cameras, where such film was still in possession of the persons involved. It was petitioner's purpose to acquire all such film, or copies thereof, which petitioner could locate, to edit and collate the film, and, in connection therewith, to interview the persons who had taken such film or were participants in *20 the filming and, pursuant to such editing, to ultimately produce a film showing actual scenes of the Viet Nam conflict, with a voice narration by the persons actually involved in the film which was being shown. In carrying out this program, petitioner followed a two-pronged approach: (a) Petitioner sought access to army files, in order to procure combat films, or copies thereof, for use in his production. In pursuing this line, petitioner determined that there were large amounts of authentic army combat film which were not being released to him. This led to requests and demands on the army for the production of such film under the Freedom of Information Act, and ultimately resulted in extended litigation by petitioner against the army in the United States District Court for the District of Columbia, and ultimately in the United States Court of Appeals for the District of Columbia Circuit, during the period of 1983 to 1986. In this effort, petitioner had partial but not complete success in getting additional film released to him by the army. (b) Petitioner sought, through personal contacts, word of mouth, and any publicity through the media which he could obtain, to make contact *21 with Viet Nam veterans who had in their possession movies which such persons had made privately during the Viet Nam conflict. Where such persons came to petitioner's attention, he attempted to meet with them, interview them, see their films, and secure their permission for the use of such films in his proposed documentary project. Both for the purpose of contacting prospective donors of film, who could be interviewed in connection therewith, as well as for the purpose of seeking out those organizations which might be interested either in financially backing the project and/or becoming customers of the final film when produced, petitioner contacted organizations such as the Public Broadcasting System (PBS), the Nebraska Public TV, television station WGN in Chicago, and the Turner Broadcasting Company. Not all such contacts were made during the years in issue. In connection with contacting potential investors and future customers, petitioner prepared short demonstration video tapes, consisting of selected film strips from films in his possession, together with petitioner's interview of the persons involved in those films, carried on the tape as a "voiceover" or narrative to explain *22 the film being shown. These demonstration film strips were produced by petitioner at his own expense. Petitioner's travel in connection with this project was likewise apparently incurred at his own expense. Petitioner had no prior experience as a filmmaker or producer, and, at the end of the period here in question, as well as at the time of trial, no final finished product in the form of a filmed documentary had been produced. No evidence as to the amount or nature of petitioner's costs in connection with this project, nor as to their allocation between the years here in issue, was produced at trial. During the years in question, petitioner maintained a two-room apartment in Arlington, Virginia, including a bedroom and living room with dining facilities. Throughout the period, petitioner used this apartment for living purposes from time to time, and also conducted activities there in connection with his personnel recruiting, as well as his Viet Nam film project. The apartment was quite small, and there was no clear delineation or segregation of areas within the apartment according to their use. Personal living facilities, such as a bed, clothes closet and dining table, were *23 intermingled with a desk, work table, office equipment of various types, and bookshelves which housed both Viet Nam film materials as well as telephone books and other documents pertaining to the personnel's recruiting activity. In addition to the income-producing activities from personnel recruiting and the pottery business, petitioner acknowledged at trial that at various times during the years in issue he had engaged in other income-producing activities. Nevertheless, petitioner made no payments of estimated income tax for any of the years in question. Upon audit, respondent determined that petitioner was liable for additions to tax under section 6654(a) with respect to each of the years, for failure to pay any estimated tax. OPINION Petitioner, who by his own admission filed no tax returns for the years in issue, was ultimately audited by respondent, who made determinations as to petitioner's income and allowable expenses and exemptions for the years 1979 through 1982. Petitioner here complains about certain of those determinations, involving (a) respondent's determination of additional income with respect to petitioner's pottery business in 1979; (b) additional claimed *24 deductions to which petitioner says he is entitled with respect to (1) business expense in connection with his personnel recruiting activities, (2) alleged expenses incurred in connection with his Viet Nam film project, and (3) home office expenses in connection with both the personnel recruiting and Viet Nam film activities; and (c) respondent's determination of additions to tax under section 6654. With respect to all these matters, the burden of proof to show error in respondent's determinations was upon the petitioner, ; Rule 142(a). Petitioner's apparent failure to understand the scope of this burden leads to his downfall herein on all issues presented. With respect to the item of additional income in 1979 from pottery sales, petitioner at trial acknowledged that he was engaged in the pottery business in 1979, yet petitioner produced no books or records showing any record of his income or expenses from this activity, nor could he articulate in his testimony any dollar figures from which the Court could be asked to make any findings of fact. Indeed, no such findings were requested. With respect to his claimed additional *25 travel and automobile expenses in connection with the personnel recruiting activity, petitioner likewise produced not a single piece of documentary evidence to support any claimed expenses, and again gave no testimony as to the amount or the year in which such expenses were incurred, nor their connection to the personnel recruiting activity. The same situation appears with respect to petitioner's claimed deductions in connection with the Viet Nam film producing activity. Petitioner testified at length on this subject. His concept was novel, and his testimony was neither unreasonable nor incredible. He appears to have approached the project in a thoughtful and businesslike manner. It might well be that petitioner entered into this project with the serious bona fide intent of making money at it. In this case, however, we need not and we do not decide whether this was a business or profit-making activity entered into with serious intent within the meaning of section 183, see , affd. without opinion . Nor do we need to decide whether, assuming the former, petitioner's expenses *26 in connection with the Viet Nam film project in the years in question must be capitalized, as we held in , and , or whether they may be currently deducted, as the Court of Appeals for the Second Circuit held in reversing us in both the Hadley and Garrison cases, . For even assuming, arguendo, that we should hold that petitioner was engaged in an honest profit-seeking venture within the meaning of section 183, and even further assuming that we should abandon our positions as taken in Hadley and Garrison, and adopt the contrary view of the Second Circuit, [3] it nevertheless remains that petitioner has not adduced one iota of evidence, either documentary or testimonial, which would enable us to make a finding that petitioner expended any amount of money in any year for any purpose connected to this venture.
*27 Precisely the same situation is presented with petitioner's claimed home office expenses. The evidence clearly indicates that petitioner's activity of personnel recruiting was a more or less established and continuously carried on business in the years in question, that petitioner apparently had no place of business other than his Arlington apartment, and that petitioner did carry on his business from that apartment. In addition, the evidence clearly shows that petitioner carried on activities in connection with his Viet Nam film project from the same apartment, and it also clearly shows that petitioner used the apartment intermittently as a residence. However, even if petitioner could overcome all the difficult hurdles imposed by section 280A with respect to his home office claim -- by showing that the Arlington apartment was his principal place of business, by showing that both the personnel recruiting activity and the Viet Nam film project were true and separate business activities, and by showing the specific portions of the apartment which were exclusively devoted on a regular basis to such business uses, see section 280A(c)(1)(A) (as to which we have considerable doubt) -- *28 it would avail petitioner nothing here since he has not made the slightest showing, in any fashion, with respect to any dollar amount which he should be entitled to deduct as allowable home office expenses. As to all the above matters, this is not a case where the Court would be authorized to employ its sound discretion in making petitioner some allowance for these claimed items based upon standard and accepted business practices, and based upon some basis in the record, however imperfect, for arriving at a reasonable dollar amount, within the rationale of , affg. and remanding . The Court cannot pluck figures out of thin air. It must have some basis for exercising its judgment and discretion, as contained in the record which is presented. As the Court of Appeals for the Second Circuit said in : The District Court may not be compelled to guess, or estimate. It may not be compelled to estimate even though such an estimate, if made, might have been affirmed. For the basic requirement is that there be sufficient *29 evidence to satisfy the trier that at least the amount allowed in the estimate was in fact spent or incurred for the stated purpose. Until the trier has that assurance from the record, relief to the taxpayer would be unguided largesse. Although the comment of the Court of Appeals quoted above was made in connection with a case tried in the United States District Court without a jury, the same standard prevails in this Court. See . We accordingly hold against petitioner and in favor of respondent on all the above-discussed issues, because of petitioner's failure of proof. As to respondent's determined additions to tax under section 6654, we likewise sustain respondent. Petitioner's only testimony on this subject was that his income from year to year was uncertain and he had no basis for making estimated payments. At the least, his stipulated fairly substantial income from personnel recruiting in the years in issue would seem to refute this claim. In any event, this section of the Code has no provision relating to reasonable cause and lack of willful neglect. It is mandatory, and extenuating circumstances are irrelevant. *30 ; . We sustain respondent's determination. Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect in the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted. ↩
2. Certain items concerning petitioner's income, expenses and liability for additions were stipulated by the parties, and petitioner's liability for additions to tax under sec. 6653(a) was conceded by petitioner on brief. ↩
3. Appeal in the instant case would presumably lie to the Court of Appeals for the Fourth Circuit, sec. 7482, so that we would not be bound herein by the position of the Second Circuit on this matter, see . ↩